# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 01-6043EM

———

| | |
|---|---|
| In re: | \* |
| | \* |
| Kenneth L. Kaelin, | \* |
| | \* |
| Debtor. | \* |
| | \* |
| | \* |
| Kenneth L.  Kaelin, | \* |
| | \*  Appeal from the United |
| Debtor - Appellant, | \*  States Bankruptcy Court |
| | \*  for the Eastern District of |
| v. | \*  Missouri |
| | \* |
| Daniel Bassett; Patricia Bassett; | \* |
| | \* |
| Creditors - Appellees, | \* |
| | \* |
| John V.  LaBarge, Jr., | \* |
| | \* |
| Trustee - Appellee. | \* |
| | \* |

———

Submitted: November 30, 2001
Filed: January 2, 2002

———

Before KOGER, Chief Judge, SCOTT and DREHER, Bankruptcy Judges.

———

DREHER, Bankruptcy Judge.

This is an appeal from an order of the bankruptcy court[1] dated July 3, 2001, which denied Appellant's motion to amend Schedule C - Property Claimed as Exempt. For the reasons stated below, we affirm the decision of the bankruptcy court.

FACTS and PROCEDURAL HISTORY

Appellant, Kenneth L. Kaelin ("Kaelin"), while intoxicated, drove into the back end of a snow plow operated by Appellee, Daniel Bassett ("Bassett"), thereby injuring Bassett. After Kaelin's liability insurer, IGF Insurance Company ("IGF"), failed to settle Bassett's claims, Bassett retained counsel to represent him and his wife, Patricia Bassett (collectively "the Bassetts"). The Bassetts made several attempts to settle their claims against Kaelin within his $25,000 liability policy coverage before sending a final demand letter ("settlement offer") on September 2, 1997. The settlement offer notified Kaelin's counsel that the offer would remain open until September 19, 1997. If the offer was not accepted, the Bassetts expressed the intent to obtain a judgment against Kaelin for actual and punitive damages and to employ all means available to collect the excess judgment and punitive damages from Kaelin as well as from IGF. IGF did not accept the Bassetts' settlement offer and the Bassetts pursued their case to trial. In March 1998, a jury awarded the Bassetts approximately $1,553,000.00 in damages, including $500,000.00 punitive damages.

Based on the information available to the Bassetts' counsel he believed that IGF acted in bad faith in failing to accept the Bassetts' offer to settle their claims against Kaelin for the $25,000.00 policy limits. The Bassetts attempted to allow Kaelin an opportunity to limit his personal liability in exchange for his assignment and/or cooperation in pursuing a possible bad faith claim against IGF. Kaelin refused to cooperate in pursuing a bad faith suit against IGF.

[1] The Honorable David P. McDonald, United States Bankruptcy Judge for the Eastern District of Missouri.

In response to this lack of cooperation, the Bassetts filed an involuntary petition in bankruptcy against Kaelin. John LaBarge was appointed chapter 7 Trustee ("the Trustee"). Kaelin's bankruptcy schedules listed the bad faith claim against IGF as a contingent, non-liquidated claim with no value, and he alleged that the claim was exempt. The Bassetts and the Trustee objected to this claim of exemption. Before the hearing on the objection the parties reached a settlement. This settlement provided that if the Bassetts recovered in the bad faith suit they would completely release Kaelin, and if not, they would refrain from garnishing Kaelin's wages until his daughter reached the age of eighteen. The bankruptcy court was informed of the settlement and a consent order was entered providing that Kaelin's bad faith refusal to settle the claim against IGF was non-exempt property.

Shortly thereafter, the Trustee filed an application to employ counsel for the "purpose of pursuing a bad faith claim against IGF Insurance Company for their refusal to settle" the Bassetts' claims against Kaelin. The bankruptcy court approved this application. Two months later the Trustee filed an amended application to employ seeking to expand the scope of his counsel's employment to include the pursuit of a possible claim of legal malpractice against Kaelin's personal injury attorneys. Within eight days of the application, Kaelin amended Schedule B - Personal Property to list an unliquidated tort claim for legal malpractice of unknown value against his personal injury attorneys and filed a motion for leave to amend Schedule C - Property Claimed as Exempt to exempt this legal malpractice claim. Kaelin also filed a motion opposing the expansion of the Trustee's attorney's representation to include pursuit of the possible legal malpractice claim. In addition, Kaelin filed a motion to set aside the consent order sustaining the prior objection to exemption and to rescind the consent agreement. The motion asked the bankruptcy court to set aside the December 6, 2000, order, which had declared the bad faith refusal to settle claim against IGF Insurance Company non-exempt property. The motion also asked the bankruptcy court to set aside the November 2, 2000 settlement

agreement between Kaelin and the Bassetts concerning their handling of the tort litigation between Debtor and the Bassetts.

At the hearing on the motions, Kaelin's counsel admitted that he had no objection to the original agreement, but wanted to block the malpractice litigation, not for his client's benefit, but for the purpose of preventing the Bassetts from suing Kaelin's personal injury lawyers. Kaelin's counsel confirmed to the bankruptcy court, and reaffirmed to this appellate panel at oral argument, that it was Kaelin's intent to abandon any malpractice claims.[2] When counsel was asked why his client wanted to abandon the cause of action--probably to his client's own detriment--no logical explanation was forthcoming either to the bankruptcy court or this appellate panel.[3]

Kaelin's attempt to protect his personal injury attorneys perplexed the bankruptcy court and continues to perplex this appellate panel. With no logical explanation as to why Kaelin wanted to exempt an asset for the sole purpose of abandoning it, the bankruptcy court found that Kaelin did not propose to amend his schedules in good faith and denied the motions. Kaelin does not appeal from the denial of the motion to set aside the consent order or from the order denying rescission of the settlement agreement. Kaelin appeals only from the order denying his motion to amend his Schedule C -Property Claimed Exempt.

---

[2]Kaelin testified at the hearing that he was never dissatisfied with the work of his personal injury attorneys and never considered a legal malpractice claim against them.

[3]The Bassetts had obtained an order from the bankruptcy court determining that Kaelin's debt to the Bassetts was non-dischargeable.

ISSUES

1.      Whether the bankruptcy court erred in finding that Kaelin's attempt to amend his exemptions to include the legal malpractice claim was in bad faith.

2.      Whether the bankruptcy court erred in finding that Kaelin's attempt to amend his exemptions to include the legal malpractice claim was prejudicial to the Bassetts or the Trustee.

3.      Whether the bankruptcy court erred in considering whether the malpractice cause of action would be exempt if the amendment was allowed.

DECISION

I.      Standard of Review

An appellate court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *See* FED. R. BANKR. P. 8013; Martin v. Cox (*In re* Martin), 140 F.3d 806, 807 (8th Cir. 1998); Merchants Nat'l Bank v. Moen (*In re* Moen), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999). The bankruptcy court has the discretion to disallow the amendment of exemptions if the amendment has been made in bad faith or prejudices third parties. *See* Martinson v. Michael (*In re* Michael), 163 F.3d 526, 529 (9th Cir. 1998); Doan v. Hudgins (*In re* Doan), 672 F.2d 831, 833 (11th Cir. 1982); Magallanes v. Williams (*In re* Magallanes), 96 B.R. 253, 256 (B.A.P. 9th Cir. 1988); Lucius v. McLemore, 741 F.2d 125, 127 (6th Cir. 1984). The bankruptcy court's decision to allow an amendment is reviewed only for abuse of discretion. *See* Dennis v. Dillard Dep't Stores, Inc., 207 F.3d 523, 525 (8th Cir. 2000); Tatge v. Tatge (*In re* Tatge), 212 B.R. 604, 610 (B.A.P. 8th Cir. 1997)(*citing* Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224 (8th Cir. 1994)(amendment may be denied on bad faith grounds).  An abuse of discretion is a decision based on an erroneous view of the law or clearly erroneous factual findings. KHBS Broadcasting Co. v. Sanders *(In re* Bozeman), 226 B.R. 627, 631 (B.A.P. 8th Cir. 1998).

5

Questions regarding the right of a debtor to claim exemptions are questions of law subject to *de novo* review, whereas the issue of a debtor's intent is a question of fact reviewed under the clearly erroneous standard. Coughlin v. Cataldo (In re Cataldo), 224 B.R. 426, 428-429 (B.A.P. 9th Cir. 1998); Szymanski v. Herzog (In re Szymanski), 189 B.R. 5, 6-7 (N.D. Ill. 1995). In this case, the Bassetts and the Trustee have not challenged the legal sufficiency or basis of Kaelin's exemptions; rather, they are contending that Kaelin's bad faith and prejudicial conduct precludes him from amending his exemptions. Therefore, any findings by the bankruptcy court on bad faith or prejudice are reviewed for clear error. Arnold v. Gill (In re Arnold), 252 B.R. 778, 784 (B.A.P. 9th Cir. 2000). "A finding of fact is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985)(*quoting* United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). A bankruptcy court's factual findings may not be overturned on appeal merely because the appellate court may have decided the issue differently. *See* Anderson, 470 U.S. at 573.

II.  Bad Faith

A debtor's right to amend a schedule is covered by Federal Rule of Bankruptcy Procedure 1009(a) which reads:

> A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.

FED. R. BANKR. P. 1009(a).

The Eighth Circuit has recognized the general rule in favor of permitting liberal amendment of exemption claims. Armstrong v. Harris (In re Harris), 886 F.2d 1011,

1015 (8th Cir. 1989). Absent a showing of bad faith or prejudice to the creditors, a debtor may amend the list of property claimed as exempt "as a matter of course at any time before the case is closed." FED. R. BANKR. P. 1009(a); In re Hardy, 234 B.R. 94, 95 (Bankr. W.D. Mo. 1999). However, upon a showing of "bad faith" the bankruptcy court may prevent the debtor from amending the claimed exemptions. *See* Doan, 672 F.2d at 833 (noting that bad faith by debtor or prejudice to creditors might bar amendment).

Bad faith is generally determined from the totality of the circumstances. Hardy, 234 B.R. at 95 (*citing* In re Alesia, 28 B.R. 46, 51 (Bankr. N.D. Ill. 1982)). *See also* Cedar Shore Resort, Inc. v. Mueller ( *In re* Cedar Shore Resort, Inc.), 235 F.3d 375, 379 (8th Cir. 2001)(balanced totality of the circumstances in determining "bad faith" chapter 11 filing); Noreen v. Slattengren, 974 F.2d 75, 76 (8th Cir. 1992)(examined totality of the circumstances in determining if chapter 13 plan filed in "bad faith"). Here, the circumstances considered by the bankruptcy court in determining whether the motion to amend was filed in bad faith included an almost two year delay between the filing of the case and the proposed amendment and the continued attempts by Kaelin and his attorney to prevent the Bassetts from pursuing IGF on the bad faith claim by initially claiming an exemption in the IGF proceeds and later in their attempt to rescind the settlement agreement. The most important factor considered by the bankruptcy court, however, was that the stated purpose for seeking the exemption was not so that Kaelin could pursue and benefit from it, but so as to allow Kaelin to abandon the asset. Although Kaelin's counsel was very forthright with his admission that Kaelin did not intend to pursue any claim of attorney malpractice, this insistence appears contrary to the best interests of Kaelin and to the Bassetts.

Kaelin and his counsel have both conceded that the exemption was not sought to provide Kaelin with a fresh start, but to protect Kaelin's personal injury attorneys from a potential claim. "The purpose of allowing debtor exemptions is to help ensure

that a 'debtor [who] goes through bankruptcy comes out with adequate possessions to begin his or her fresh start.'" Marine Midland Bank v. Scarpino, 113 F.3d 338, 340 (2d Cir. 1997)(quoting H.R. REP. No. 95-595, at 126 (1977), reprinted in, 1978 U.S.C.C.A.N. 5963, 6087); *see also In re* Moore, 251 B.R. 380 (Bankr. W.D. Mo. 2000). Clearly, it was the intent of Kaelin or his counsel to hinder or delay a possible recovery by the Bassetts and the Trustee and not to preserve the asset for Kaelin's benefit. This attempt to delay a creditor in the collection of a non-dischargeable debt amounts to "bad faith," and the bankruptcy court so held. *See, e.g.,* Hatcher v. United States Trustee (In re Hatcher), 218 B.R. 441, 448 (B.A.P. 8th Cir. 1998); In re Mattson, 241 B.R. 629, 638 (Bankr. D. Minn. 1999). The bankruptcy court determined that such conduct was "strange" and "bizarre" since any effort by the Trustee to collect the assets of the debtor would ultimately be for his benefit and not harm Kaelin "one iota." All of these factors, when considered in the "totality of the circumstances," constitute sufficient cause to find "bad faith." The bankruptcy court's "bad faith" determination is a factual finding that can be overturned only if it is clearly erroneous. Haber Oil Co. v. Swinehart (In re Haber Oil Co.), 12 F.3d 426, 434 (5th Cir. 1994). Because the finding of bad faith is supported by the record, the bankruptcy court's finding is not clearly erroneous and, therefore, the denial of the motion to amend is not an abuse of discretion.

III. Prejudice

We can affirm the bankruptcy court's decision if either "bad faith" or "prejudice" has been shown. Because we have determined that the bankruptcy court did not err in denying the motion to amend on the basis of "bad faith," it is not necessary to address whether the proposed amendment was prejudicial. *See* Hanson v. F.D.I.C., 113 F.3d 866, 869 (8th Cir. 1997)(appellate court may affirm on any ground supported by the record).

IV. The Merits of the Exemption

The final issue raised by Kaelin is his assertion that the bankruptcy court should not have considered the merits of the exemption in determining whether to allow the amendment. Kaelin misconstrues the decision of the bankruptcy court. While the court complied with the request by counsel for Kaelin to read case authority indicating that the exemption was meritorious under Missouri law, the bankruptcy court's order makes no mention of the underlying validity of the exemption and same appears to have played no role in the decision whether to allow the amendment in the first place. Moreover, having asked the court to consider the merits of the exemption, Kaelin is foreclosed from objecting to the court's having done so.

ACCORDINGLY, we affirm.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL
FOR THE EIGHTH CIRCUIT